UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| HUGH COOPER, administrator of the ESTATE OF WANDA COOPER | ) ) ) | Civil No. 13-14-GFVT |
| Plaintiff, | ) ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| THAMES HEALTHCARE GROUP, LLC; PRINCIPLE LONG TERM CARE, INC; PRINCIPLE IT SERVICES, INC.; and ZETTIE M. PARKER TURNER, in her capacity as administrator of Rivers Edge Nursing and Rehabilitation Center | ) ) ) ) ) ) ) ) | **&** **ORDER** |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Hugh Cooper, administrator of the Estate of Wanda Cooper, seeks leave to amend his complaint to join Tamika Gidron as defendant to this action. [R. 14]. Cooper's Estate simultaneously filed a motion to remand on the grounds that joining Gidron would destroy diversity and divest this Court of jurisdiction. [R. 13]. Further, Cooper's Estate has moved for a period of limited discovery, during which time it expects to find that Defendant Zettie Parker Turner is also not a diverse party. [R. 17]. Defendants Thames Healthcare Group, Principle Longterm Care, and Principle IT Services, oppose all three motions. [R. 15, 16, 18]. Because the Court finds that the 28 U.S.C. § 1447(e) factors do not counsel joinder of Tamika Gidron and that no further discovery is necessary for a determination that complete diversity is present in this case, the Estate's motion for leave to file an amended complaint, motion to remand, and motion for leave to allow limited discovery, shall be **DENIED**.

I

Cooper's Estate initiated this action on February 27, 2013 in Franklin Circuit Court. [R. 1-1 at 3]. The Estate alleges that the Defendants' negligence caused the decedent injuries during her residency at the Rivers Edge Nursing and Rehabilitation facility, including *Clostridium difficile*, acute respiratory failure, acute anemia, dehydration, malnutrition with hypoalbumenia, pneumonia, infections, metabolic encephalopathy, pressure sores with necrotic and gangrene tissue, sepsis, and poor hygiene. [R. 13-1 at 2]. Further, Cooper's Estate claims that Wanda Cooper died as a result of the Defendants' negligence. [R. 13-1 at 2]. The Estate's complaint named the aforementioned defendants, as well as five "Unknown Defendants." [R. 1-3 at 1].[1] On March 11, 2013, Cooper's Estate filed a first amended complaint, which did not add, remove, or provide additional identification for any of these defendants. [R. 1-12].

The Defendants removed the case to this Court on March 18, 2013 on the grounds of federal diversity jurisdiction.[2] [R. 1]. On April 12, 2013, before any additional discovery had taken place, Cooper's Estate filed a motion for leave to file a second amended complaint. [R. 14]. The principle addition to the tendered second amended complaint is that it asserts claims against Tamika Gidron. [R. 14-1]. Specifically, Cooper's Estate alleges that in her capacity as the Director of Nursing Services at Rivers Edge, Gidron was negligent in caring for Wanda Cooper, causing her injuries. [R. 14]. It is notable that the Estate does not suggest that Gidron was one of the original "Unknown Defendants," and, in fact, the second amended complaint still

---

[1] These "Unknown Defendants" were described as, "entities and/or persons, either providing care and services to Wanda Cooper, or directly or vicariously liable for the injuries of Wanda Cooper." [R. 1-3 at 5].

[2] It is undisputed that the Estate is considered a resident of Kentucky, while Thames Healthcare Group, Principle Longterm Care, and Principle IT Services are all considered citizens of North Carolina. It is also undisputed that the amount in controversy is in excess of this Court's jurisdictional minimum. Zettie Turner is the only party named in the original complaint whose residency is in dispute.

purports to assert claims against five "Unknown Defendants" in addition to Gidron. [R. 14-1]. Simultaneously with the motion for leave to file a second amended complaint, Cooper's Estate also filed a motion to remand the case to state court. [R. 13]. As grounds for that motion, the Estate notes that Gidron is a Kentucky resident, who, if joined, would destroy diversity and divest this Court of jurisdiction. The Defendants do not disagree that Gidron would be a non-diverse defendant, but oppose the motion on the grounds that joining Gidron is unnecessary and improper under the jurisdictional rules. [R. 16].

Rather than reply to the Defendants' opposition to its motion to remand, Cooper's Estate moved the Court to allow a period of limited discovery so that it could investigate the domicile of named defendant Zettie M. Parker Turner, who the Estate believes is actually a resident of Kentucky as well. [R. 17-4]. Cooper's Estate lists several reasons for its belief that Turner lives in Kentucky rather than Tennessee. First, the Estate notes that Turner owns property in Louisville, Kentucky. [*Id.*] During a deposition in November 2012, Turner testified under oath that she currently lived in Louisville. [*Id.*] Additionally, when the Estate's process sever went to that Louisville residence on May 6, 2013, he was able to contact Turner from the lobby of her condominium complex. [*Id.*] According to the server, Turner told him that she was traveling and disconnected the phone call. [*Id.*] Based on these facts, Cooper's Estate believes additional discovery is merited as to the actual residence of Turner, and whether she is actually a diverse defendant. The Defendants do not attempt to argue that Turner is not an appropriate party to the action, but tender an affidavit to their response wherein she swears under oath that she is a resident of Tennessee and explains the aforementioned facts. [R. 18-1]. The Defendants claim that this affidavit alleviates the need for further discovery into Turner's residence. [R. 18]. As the response time has elapsed on this final issue, all three of these related motions are now ready

for resolution by the Court.

II

A

Amendments to pleadings are generally governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek the amendment within the of right period, the court may give leave to permit such an amendment and should "freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The United States Supreme Court has read this provision broadly and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

However, when a case has been removed to federal court and the amendment to the complaint would divest the court of jurisdiction, Congress has left the decision to the discretion of the courts. 28 U.S.C. § 1447(e). ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *See also*, *Collins ex rel. Collins v. Nat'l Gen. Ins. Co.*, CIV. 10-13344, 2010 WL 4259949 (E.D. Mich. Oct. 25, 2010). Though the Sixth Circuit has provided little guidance on this statutory section,[3] courts in this district generally consider the following factors when reviewing a motion to amend a complaint under

---

[3] The Sixth Circuit has referenced the following factors with approval while addressing the effect of substituting a non-diverse party for a fictitious defendant. *Curry v. U.S. Bulk Transp., Inc*., 462 F.3d 536, 540 (6th Cir. 2006)(citing 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice And Procedure § 3723 (3d ed.1998)); *see also Walters v. Lowe's Home Imp. Warehouse of Georgetown*, CIV.A. 5:10-302-JMH, 2011 WL 3319717 (E.D. Ky. Aug. 1, 2011) (Discussing the applicability of *Curry* to the context of 28 U.S.C. § 1447(e)).

Section 1447(e): "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if amendment is not allowed; and (4) any other equitable factors." *Premium Fin. Grp., LLC v. MPVF LHE Lexington LLC*, 5:13-CV-362-KKC, 2014 WL 112308, at *4 (E.D. Ky. Jan. 9, 2014) (citing *Bridgepointe Condominiums, Inc. v. Integra Bank Nat. Ass'n*, CIV.A. 08-475-C, 2009 WL 700056, at *2 (W.D. Ky. Mar. 13, 2009)); *see also*, *Harmon v. McCreary*, CIV.A. 07-3-DLB, 2007 WL 4163879 (E.D. Ky. Nov. 20, 2007); *Lester v. Extendicare, Inc.*, 6:13-CV-21, 2013 WL 3781300, at *3 (E.D. Ky. July 18, 2013); *Collins ex rel. Collins*, 2010 WL 4259949 at *2 (citing *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987)). Among these factors, the first is "'of paramount importance,' because these factors are intended to determine whether 'the primary purpose of the proposed joinder is to oust the case from the federal forum.'" *Premium Fin. Grp., LLC*, 2014 WL 112308, at *4 (citing *Bridgepointe Condos, Inc.*, 2009 WL 700056 at *2; *City of Cleveland,* 571 F.Supp.2d at 823; *J. Lewis Cooper Co. v. Diageo N. Am., Inc.,* 370 F.Supp.2d 613, 618 (E.D.Mich.2005)).

Before turning to the application of these factors, it is important to note the absence of the factor exclusively discussed by Cooper's Estate. In its motion to remand, Cooper's Estate stated that, "[t]he only issue before this Court is whether Plaintiff can establish a cause of action against Director of Nursing Services Tamika Gidron in a State Court Action." [R. 13]. However, this inquiry is the general standard for determining whether a fraudulent joinder has occurred. *Wise v. Extendicare Homes, Inc.*, 1:12CV-00100-JHM, 2013 WL 495408, at *2 (W.D. Ky. Feb. 7, 2013) (quoting *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir.1999)) ("To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."). Though

they are related, the Section 1447(e) factors and the fraudulent joinder analysis "differ significantly," and cannot be substituted for each other. *Bridgepointe Condominiums, Inc.*, 2009 WL 700056, at *2; *Walters v. Lowe's Home Imp. Warehouse of Georgetown*, CIV.A. 5:10-302-JMH, 2011 WL 3319717, at *1 (E.D. Ky. Aug. 1, 2011). "Courts use the doctrine of fraudulent joinder to prevent a plaintiff from naming 'non-diverse nominal or irrelevant parties' in order *to avoid removal*….In contrast, Section 1447(e) enables a court to prevent a party from single-handedly depriving it of jurisdiction by giving the court the discretion to prohibit joinder of non-diverse parties *after removal*. *Bridgepointe Condominiums, Inc.*, 2009 WL 700056 at *2 (citing *City of Cleveland,* 571 F.Supp.2d at 824 n. 27)) (emphasis added); *see also Cobb v. Delta Exports, Inc.,* 186 F.3d 675, 677 (5th Cir.1999) ("The fraudulent joinder doctrine does not apply to joinders that occur *after* an action is removed.") (emphasis in original). Because the motion for leave to file an amended complaint asserting claims against a non-diverse party occurred after removal, the Section 1447(e) factors apply and the Estate's discussion of fraudulent joinder is inapposite.

While a plaintiff's motive is irrelevant to the fraudulent joinder analysis, it is the first and primary Section 1447(e) factor, which asks to what extent the purpose of the amendment is to defeat federal jurisdiction. *Premium Fin. Grp., LLC*, 2014 WL 112308, at *4; *Wise*, 2013 WL 495408, at *2. Cooper's Estate claims that it "has a good-faith basis for seeking to name Tamika Gidron as DNS, as the individual who was in charge of caring for and supervising the nursing staff at Defendants' facility for failing to do so." [R. 14 at 3]. This explanation would be more compelling had the Estate learned of the identity of Gidron after a period of discovery following removal and then moved for leave to file an amended complaint substituting her for one of the original "Unknown Defendants." However, that was decisively not the circumstances

6

underlying this motion to amend. The Defendants claim, and the Estate does not deny, that Cooper's Estate was aware of Gidron and her position at the time of the filing of the original complaint in state court. [R. 16 at 9]. In fact, the record reveals that Gidron was identified to Plaintiff's counsel as the Director of Nursing during the deposition of Robin Marie Clark on May 24, 2012, nearly a year before the notice of removal was filed. [R. 16-1].[4] Even so, the Estate did not seek to join Gidron until after removal.

Moreover, Cooper's Estate filed the motion to amend less than a month after removal and simultaneously with its motion to remand, which was based solely on the joinder of Gidron. The parties exchanged no new discovery from the time of the removal to the time of the filing of the motion to remand to prompt the need for this amendment. [R. 16 at 9]. Under circumstances such as these, courts have previously made the logical inference that the motion to remand was made for the purposes of divesting the federal court of jurisdiction. *See*, *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999) ("Especially where, as here, a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction."); *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258, 264 (E.D.N.Y. 2009) ("The amended complaint was filed contemporaneously with McGee's motion to remand. The inference is all but compelled that the complaint was amended with the deliberate purpose of divesting this Court of jurisdiction."). Additionally, the Estate has not only moved to amend its complaint, but has also filed a subsequent motion to conduct discovery in order to see whether remand might be had through some other means. Taken together, the Court finds that the

---

[4] This deposition was taken in the course of a separate litigation that also featured the Plaintiff's counsel.

circumstances surrounding the motion to amend suggest that the true purpose of joining Gidron is to destroy the jurisdiction of this Court. As such, the first factor weighs against Cooper's Estate.

The conclusion of the first factor is further supported by that of the third factor, under which the Court finds that the Plaintiff would suffer no substantial prejudice if joinder were to be disallowed. Specifically, it appears that, while Cooper's Estate might have colorable claims against Gidron, it may obtain full relief without joining her to this action. The Estate's claims are based on allegations of "negligence, medical negligence, administrator negligence, violations of Ms. Cooper's rights as a long-term care residence pursuant to KY. REV. STAT. ANN. 216.510 et seq., and wrongful death." [R. 13-1 at 3]. However, as stated by the Defendants, each of the Estate's claims against Gidron for negligence are based on conduct occurring in the course and scope of her employment as the Director of Nursing Services at Rivers Edge Nursing and Rehabilitation facility. [R. 16 at 12]. As a result, the doctrine of respondeat superior would likely render her employers, who are already named defendants in this action, liable for any of the tortious acts that she is found to have caused. *See O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l, Inc. v. McCoy,* 244 S.W.3d 44, at 56 (Ky.2008)) ("[u]nder the doctrine of respondeat superior, an employer can be held vicariously liable for an employee's tortious actions if committed in the scope of his or her employment."). Cooper's Estate does not deny that this is the case under Kentucky law. Further, the Defendants note that the particular statutory sections cited by the Estate in its complaint, provide a cause of action against the facility rather than an individual employee of the facility operating in the course and scope of her employment. KRS § 216.515 ("Any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility

8

responsible for the violation.")). Once again, the Estate does not dispute that this is an accurate statement of Kentucky law. That the Estate could likely obtain full recovery without joining Gidron, shows that it would not suffer substantial prejudice if the joinder was disallowed and suggests that the true purpose of the joinder was to destroy federal jurisdiction. Therefore, the third factor weighs against Cooper's Estate.

The second factor – whether the plaintiff has been dilatory in seeking amendment – is somewhat neutral in this case. As a scheduling order has not been entered and no discovery has taken place, this case is in its infancy. Further, a two month interval after the original complaint is filed is not an overwhelmingly extensive period of time, and courts have found that a longer period was not dilatory. *See, e.g.*, *Bridgepointe Condominiums, Inc.*, 2009 WL 700056 at *3 (wherein four months had elapsed from the filing of the original complaint, although only two weeks had passed since the deposition in which the removing party learned facts necessitating joinder). However, courts have also found similar time frames to be dilatory. *See, Multi-Shot, LLC v. B & T Rentals, Inc.*, 2010 WL 376373 (S.D. Tex. 2010) (noting two months after the filing of the original complaint and almost thirty days after removal had been considered dilatory); *Wells* v. *Certainteed Corp.,* 950 F. Supp. 200, 201 (E.D. Mich. 1997) (two months); *Johnson v. Pharmacia & Upjohn Co.*, 4:99-CV-96, 1999 WL 1005653 at *1 (W.D. Mich. Oct. 12, 1999) (three weeks). The trouble with these two months is that, as previously discussed, it is undisputed that the Plaintiff and his counsel knew about Gidron and her position at the nursing facility at the time of the filing of the original complaint. [R. 16 at 10 n. 4]. Further, the Estate has made no efforts to counter the Defendants' assertion that it was dilatory in filing its amendment or to explain the reason for the delay. Thus, while two months is not a lengthy

9

period of time in general, the fact that the Estate had knowledge of the reason for the amendment the entire time does not permit this factor to weigh in favor of joinder.

Finally, the Estate does not suggest, nor does the Court find, any additional equitable factors that would counsel using its discretion to allow joinder of Gidron in this case. On the other hand, under this factor, courts often take into consideration the defendant's "substantial interest in proceeding in a federal forum." *Bridgepointe Condominiums, Inc.*, 2009 WL 700056 at *4. Here, the Defendants are truly North Carolina citizens facing suit in Kentucky state courts by a Kentucky resident. Thus, as the Defendants' interest in a neutral forum is significant in this case, the final factor weighs in favor of denying the motion to amend and refusing joinder.

The balance of the factors in this case weigh against permitting joinder under Section 1447(e). Though the Defendants removed the case soon after the filing of the initial complaint, the Estate knew about Gidron at the time it initiated this action. Cooper's Estate did not seek to add Gidron until after removal, even though no discovery had taken place from the time of removal to the time of the motion to amend. Further, the motion to amend was filed simultaneously with a motion to remand and shortly before the entry of another motion concerning jurisdiction. Finally, even if Gidron is not joined, Cooper's Estate may still obtain complete relief in this action. Thus, the Court finds that the purpose of the amendment is to destroy jurisdiction, the plaintiff would suffer no substantial prejudice if the amendment were not allowed, and the Defendants would be denied their substantial interest in a federal forum if the amendment were allowed. As such, the motion for leave to file an amended complaint and the related motion to remand shall be denied.

B

Campbell's Estate has also requested leave to conduct limited discovery as to whether named defendant Zettie M. Parker Turner is actually a Kentucky domiciliary. [R. 17-4]. The Estate's suspicions as to Turner's residency were aroused when it discovered that she owned a dwelling in Louisville, Kentucky. [R. 17-4 at 3]. On November 30, 2012, Turner testified under oath at a deposition that she currently lived in Louisville.[5] [*Id*.] Brian Carrier, the Estate's aptly-named process server, sought Turner at that Louisville address on May 6, 2013. [*Id*.] He called and connected with Turner from the lobby of her condominium complex. [*Id*.] Though she indicated to him that she was traveling, this suggested to the Estate that she was actually residing in Louisville, Kentucky rather than Tennessee. [*Id*.] Based on these facts, Cooper's Estate seeks leave to conduct additional discovery as to Turner's actual address.

For the purpose of determining diversity jurisdiction, the relevant inquiry is the defendant's domicile at the time of the filing of the complaint. *Von Dunser v.. Aronoff,* 915 F.2d 1071, 1072 (6th Cir.1990) (citing *Sadat v. Mertes,* 615 F.2d 1176, 1180 (7th Cir.1980)); *Emlyn Coal Processing of Minnesota, LLC v. Xinergy Corp.*, 6:09-CV-128-HAI, 2011 WL 1988249 at *6 (E.D. Ky. May 19, 2011). "To establish a domicile of choice a person generally must be physically present at the location and intend to make that place his home for the time at least." *Emlyn Coal Processing of Minnesota*, 2011 WL 1988249 at *6 (citing *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980)). Courts look to various factors in determining an individual's domicile:

> Current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in

---

[5] It is noteworthy that this deposition was not taken in connection with this case, as it was taken before the complaint was filed.

unions; fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

*Persinger v. Extendicare Health Servs., Inc.,* 539 F.Supp.2d 995, 997 (S.D.Ohio 2008) (quoting 13B Charles A. Wright, et al., *Federal Practice & Procedure* § 3612 (2d ed.1984)) (internal brackets omitted). One manner in which a defendant may demonstrate to the Court that she is a domiciliary of a certain place is to tender an affidavit addressing these factors and her citizenship. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 913 F. Supp. 517, 521 (E.D. Ky. 1996).

Turner has tendered an affidavit to this Court, in which she states, "I consider Tennessee my home and I intend to make Tennessee my home for the foreseeable future." [R. 18-1 at 2]. In this affidavit, she sets forth the following facts in support of the affirmation that she is a Tennessee Domiciliary: her residence has been in Tennessee since December 8, 2012, she is registered to vote in Tennessee, she maintains her bank account in Tennessee, she regularly attends church in Tennessee; she has a Tennessee driver's license, she works in Tennessee[6]; she has paid taxes as a Tennessee resident; and her vehicle is registered in Tennessee. [R. 18-1 at 2]. Certainly, these factors suggest that Turner is a Tennessee domiciliary.

The affidavit also addresses the issues raised by the Estate's motion for leave to conduct discovery as to Turner's domicile. Turner readily admits that she continues to own condominium unit in Louisville, Kentucky. [R. 18-1 at 2]. However, she notes that it has been up for sale since November 13, 2012, and that she relocated from that residence to Tennessee on December 8, 2012. [*Id.*] Thus, Turner was living in the Louisville condominium on November

---

[6] Turner resigned from Rivers Edge Nursing and Rehabilitation Center in November 2012, and accepted a position at Grace Healthcare in Cordova, Tennessee on December 3, 2012. [R. 18-1, at 1-2].

30, 2012, the date of the previous deposition, but she had moved out by the time of the filing of the complaint on February 27, 2013. [*Id.*] Turner further states that, while the Louisville condominium is vacant and for sale, she remains connected to a "resident unit directory and a call box," such that any calls to the residence are redirected to her cellular telephone number. [*Id.*] As a result, Turner maintains that she does not have to be present at the Louisville condominium to answer a call from its lobby, and that she was not, in fact, residing there on the day she was contacted by the Estate's process server. [R. 18-1 at 3].

The Court is satisfied by Turner's sworn statements that she is domiciled in Tennessee, and thus a diverse defendant for the purposes of the jurisdiction analysis. The affidavit has provided a reasonable explanation for each of the Estate's concerns, and Cooper's Estate has not responded with any further facts that might call Turner's citizenship into question. As a result, the Court finds that a period of limited discovery to inquire further into Turner's domicile is unnecessary, the Estate's motion to that effect shall be denied.

### III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion for Leave to File an Amended Complaint [R. 14] is **DENIED**;

2. The Plaintiff's Motion to Remand [R. 13] is **DENIED**; and

3. The Plaintiff's Motion for Leave to Allow Limited Discovery Regarding Zettie M. Parker Turner's Domicile and to Hold Ruling on Plaintiff's Motions in Abeyance Pending Completion of Limited Discovery [R. 17] is **DENIED.**

This 11th Day of March, 2014.

 Signed By:
*Gregory F. Van Tatenhove*
United States District Judge